# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL ACTION NO. 3:04-CV-599-DCK

| | |
|---|---|
| JEROME FREDERICK,  )  <br> ) <br> Plaintiff,  ) <br> ) <br> v.  ) <br> ) <br> CITY OF CHARLOTTE,  ) <br> ) <br> Defendant.  ) <br> _____  ) | **ORDER** |

**THIS MATTER IS BEFORE THE COURT** on Defendant's "Motion For Summary Judgment" (Document No. 12) and "Memorandum Of Law In Support Of Defendant's Motion For Summary Judgment" (Document No. 13), filed December 14, 2006; "Plaintiff's Memorandum Of Law And Authority In Opposition To Defendant's Motion For Summary And Memorandum In Support Of Motion For Summary Judgment" (Document No. 16), filed January 22, 2007; and "Defendant's Reply In Support Of Summary Judgment" (Document No. 19), filed February 8, 2007. The parties have consented to Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636(c), and the motion is now ripe for disposition.

Having carefully considered the papers, the record, applicable authority, and the arguments of counsel at a Motions Hearing on May 22, 2007, the undersigned will grant the motion for summary judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This matter has a somewhat unusual procedural history. The case involves identical parties and similar issues to the prior case of Frederick v. City of Charlotte, No. 3:03-CV-179 ("*Frederick I*"), in which this Court granted summary judgment for Defendant on March 22, 2005. The Fourth

Circuit later affirmed. Belton v. City of Charlotte, 175 Fed. Appx. 641 (4th Cir. 2006). This case is substantially similar to Belton v. City of Charlotte, No. 3:04-CV-600-DCK , also currently pending before the Court.

The instant action was initiated by Plaintiff's filing of a Charge of Discrimination with the Equal Employment Opportunity Commission, Charge Number 140-2004-03453 ("EEOC Charge"), on March 18, 2004. The EEOC charge alleged discrimination based on retaliation and stated in pertinent part:

> On or about November 4, 2002, I filed a discrimination Complaint with the EEOC under Charge Number 140A300206 citing failure to promote as one of the forms of discrimination. Since that date, on December 1, 2003, the general requirements for promotion to Deputy Chief have been changed to include a four-year Bachelor's Degree, effectively eliminating me from the promotion process.
>
> I believe I have been discriminated against in retaliation for having complained of practices made unlawful by Title VII of the Civil Rights Act of 1964, as amended.

On September 15, 2004, the EEOC issued its Dismissal and Notice of Right to Sue, and this lawsuit followed.

Plaintiff filed his Complaint (Document No. 1) in the instant case on December 6, 2004, prior to the Court's summary judgment ruling in *Frederick I*. Plaintiff's Complaint in this case was brought pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*, and alleges retaliation against Plaintiff for his previous complaints of racial and gender discrimination. As forecast by the EEOC Charge excerpt above, the only specific charge of retaliation in the Complaint (Document No. 1) states that "Defendant altered the general requirements for promotion to Deputy Chief to include a four-year Bachelor's Degree, effectively eliminating Plaintiff from competing in the promotion process." (Complaint, (Document No. 1 at

¶ 13)).

As noted, soon after this case began, the Court granted summary judgment for Defendant in *Frederick I*. The Complaint in that case alleged gender and race based discrimination and retaliation under Title VII. In *Frederick I*, the Plaintiff specifically described the discrimination as "failure to promote, discriminatory remarks, disparate treatment, retaliation for complaining of the racial and gender discrimination, and refusal to address the hostile work environment." The undersigned found in *Frederick I* that the Plaintiff failed to make a prima facie case on his claims of discrimination, hostile work environment, or retaliation and thus determined that Defendant was entitled to summary judgment. On May 23, 2006, the Fourth Circuit affirmed.

On December 14, 2006, Defendant filed for summary judgment in the instant case (*"Frederick II"*) contending that this action was barred by res judicata and/or collateral estoppel based on the outcome of *Frederick I*. In the alternative, Defendant also contends in his summary judgment motion in *Frederick II* that the discriminatory action alleged - the requirement of a 4-year degree for promotion to Deputy Chief - is neutral as to race and gender and was not enacted to discriminate or retaliate against Plaintiff. Defendant argues that there is no remaining genuine issue of material fact and summary judgment should be granted.

Plaintiff is currently a Battalion Chief in the Charlotte Fire Department. At the heart of *Frederick I* and *II* is Plaintiff's argument that he has been discriminated against in his endeavors to become a Deputy Chief. There are four Deputy Chiefs, each of whom reports to the Fire Chief in the Charlotte Fire Department. The Fire Chief is responsible for hiring each Deputy Chief, although the Fire Chief is subject to the oversight of the City Manager. A position of Deputy Chief only becomes available when one of the current Deputy Chiefs decides to leave. Deputy Chiefs supervise

operational battalions, which are headed by Battalion Chiefs. Battalion Chiefs supervise individual fire stations, as well as the firefighters on the fire trucks.

Plaintiff was hired by the Charlotte Fire Department as a firefighter on August 24, 1977. He was promoted to Firefighter-Engineer on September 10, 1980, and subsequently was promoted to Fire Captain on July 20, 1983. He was then promoted to Battalion Chief on May 11, 1988 and now directly supervises nine companies, with eleven captains and approximately thirty-seven firefighters and engineers in five fire stations.

According to Defendant, the Fire Department is constantly trying to improve, and among other methods, encourages ongoing training and education. To that end, the Fire Department has over time issued a series of letters or memoranda to personnel noticing degree requirements for promotion to certain positions. On February 9, 1999, for example, the Fire Chief warned that after January 1, 2003, "a minimum of an Associate's (two year) Degree in Fire Science or any B.S./B.A. (four year) Degree will be required to participate in the promotional process for Fire Captain." (Document 12-2 at 2). This requirement was communicated in additional memoranda dated January 13, 2000, February 5, 2001, February 15, 2002 and every year thereafter through at least February 10, 2006.

Candidates for Battalion Chief were notified of the same degree requirement on January 13, 1998, to be effective after January 1, 2001. In February 2001, notice was issued that as of January 2005, potential applicants for Battalion Chief would be required to have a minimum of a B.S./B.A. (four year) degree. On December 1, 2003, General Order 206.1 was amended. Among other things, it added a requirement that future applicants for Deputy Fire Chief would also need to possess a four-year degree. The original deadline for the Deputy Chief four-year degree requirement was January

4

1, 2005; following complaints, however, the deadline was later extended to January 1, 2009.

Only Battalion Chiefs are eligible to compete for the position of Deputy Chief. At the beginning of this lawsuit, Defendant stated that there were thirty Battalion Chiefs in the Charlotte Fire Department; twenty-three white males, three white females, and four African-American males. Of those, 52.2 % of the white males, 66.6% of the white females, and 75 % of the African-American males had their four-year degree. Plaintiff obtained his two-year associate degree in fire science from Central Piedmont Community College in 1982.

## II. STANDARD OF REVIEW

The standard of review here is familiar. Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A dispute about a material fact is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). As this Court has previously explained,

> Defendant as the moving party has the initial burden to show a lack of evidence to support Plaintiff's case. If this showing is made, the burden then shifts to the Plaintiff who must convince the Court that a triable issue does exist. Such an issue will be shown "if the evidence is such that a reasonable jury could return a verdict for the [Plaintiff]."

Boggan v. Bellsouth Telecomms., Inc., 86 F.Supp. 2d 545, 547 (W.D.N.C., 2000) (citations omitted).

The non-moving party opposing summary judgment "may not rest upon the mere allegation or denials of his pleading, but his response ... must set forth specific facts showing there is a genuine issue for trial. Anderson, 477 U.S. at 248. In deciding a motion for summary judgment, the court

5

views the evidence in the light most favorable to the non-moving party, that is, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. at 255.

## III. DISCUSSION

After careful review of this matter, the undersigned can only conclude that there remains no genuine issue of material fact on Plaintiff's retaliation claim. Summary judgment for Defendant is therefore granted.

### A. Four Year Degree Requirement.

As an initial matter, it is important to note that Defendant's motion for summary judgment understandably focuses on refuting Plaintiff's claim in his Complaint that it retaliated against Plaintiff for previous allegations of discrimination by altering the general requirements for Deputy Chief to include a four-year degree. Defendant argues in its "Memorandum of Law In Support ..." (Document No. 13) that the degree requirement is race and gender neutral, that the requirement was not meant to discriminate against Plaintiff who actually was never prevented from competing for Deputy Chief based on that qualification, and that in any event this very issue was raised and decided by the Court in *Frederick I* in an opinion that was affirmed by the Fourth Circuit.

Plaintiff, for his part, appears to concede at least this final point. Specifically, Plaintiff states in his "...Memorandum Of Law And Authority In Opposition..." (Document No. 16), as follows:

> Plaintiff concedes and agrees that the issue of the Four Year Degree Requirement, or General Order 206.-1, has been litigated. While Plaintiff does not agree with the outcome of those related holdings, it is clear that claim and issue preclusion apply to this particular form of retaliation in the instant case. Therefore, Plaintiff will not revisit this matter in this writing.

Thus, based on the Defendant's arguments, and the concession of Plaintiff, the undersigned

6

determines that there is no issue of material fact as to discrimination or retaliation based on a requirement that Deputy Chiefs possess a four-year degree. On this point, the Court will therefore grant summary judgment for the Defendant, without further discussion.

**B. Failure to Investigate**.

While conceding the degree requirement issue, the Plaintiff's "...Memorandum Of Law And Authority In Opposition..." raises a claim - apparently for the first time - of retaliation based on Defendant's "failure to investigate." To be clear, Plaintiff did not raise this issue in either his EEOC Charge or his Complaint in this action. In defending against summary judgment, Plaintiff now contends that Defendant retaliated against Plaintiff for the Complaint brought in *Frederick I* by failing to investigate those charges of discrimination. Plaintiff alleges in this lawsuit that "the Defendant intentionally failed or refused to investigate his repeated complaints of discrimination based upon race." (Document No. 16 at 2).

The Fourth Circuit has found only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit. King v. Seaboard Coast Line R.R., 538 F.2d 581, 583 (4th Cir. 1976); see also Lawson v. Burlington Indus., 683 F.2d 862, 863-864 (4th Cir. 1982). However, the Court will not rest its decision on the position that Plaintiff is completely foreclosed from pursuing this apparently new theory of retaliation. Even though the undersigned finds no EEOC Charge relating to retaliation by failure to investigate, or a reasonable relationship of that claim to the original complaint or its investigation, in an abundance of caution, the Court examines on the merits the question of whether there is a genuine issue of material fact on the claim that Defendant retaliated against Plaintiff by failing to investigate.

7

The analysis is familiar. Title VII prohibits discrimination by an employer against any individual because such individual "has opposed any practice made an unlawful employment practice" by Title VII, or "participated in any manner in an investigation, proceeding, or hearing under" Title VII. 42 U.S.C. § 2000e-3(a). In the absence of substantial, direct evidence of retaliation, an employee may establish a violation of Title VII by retaliation through use of the McDonnell Douglas three-step framework. See McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); Evans v. Tech. App. & Serv. Co., 80 F.3d 954, 959 (4th Cir. 1999); Ross v. Communications Satellite Corp., 759 F.2d 355 (4th Cir. 1985) ("The sequence of proof and burdens prescribed by [McDonnell Douglas] are applicable to retaliation cases under § 2000e-3 as well as to discriminatory treatment claims."), overruled on other grounds by, Price Waterhouse, 490 U.S. 228; Discrimination Law 673-77.

To briefly reiterate, the plaintiff must first establish a prima facie case, which – with respect to retaliation – requires proof

> (1) that [he] engaged in protected activity; (2) that the employer took adverse employment action against [him]; and (3) [that] a causal connection existed between the protected activity and the adverse action.

McNairn v. Sullivan, 929 F.2d 974, 980 (4th Cir. 1991) (citation omitted). Once the plaintiff has made out a prima facie case, the employer has the opportunity to present a legitimate, non-discriminatory reason for the adverse employment action. See Evans, 80 F.3d at 959. If the employer does so, the presumption of discrimination drops from the case and the employee bears the burden of establishing that the reason proffered by the employer is a pretext for discrimination. See id.; McNairn, 929 F.2d at 980. The employee must do so by showing "both that the reason was false and that retaliation was the real reason for the challenged conduct." Holmes v. West, 2000 WL

8

365400, *4 (4th Cir. 2000) (internal marks and citation omitted).

Plaintiff's new allegations of retaliation for the filing of a complaint by failing to investigate the charges of discrimination certainly asserts a protected activity - the right to bring a complaint under Title VII for discrimination. However, Plaintiff's allegation of adverse employment action - a failure to investigate - is not supported by the facts. Furthermore, the Court finds no evidence of a causal connection between the investigation of Plaintiff's allegations, or the lack thereof, and the filing of his previous complaint <u>or</u> his failure to gain promotion to Deputy Chief.

Plaintiff's argument on summary judgment is unusual. Despite the fact that Plaintiff contends in his brief that "[r]etaliation in the form of failure to investigate is the heart of Chief Frederick's complaints against the Defendant in the present case" and "[a]t all times the retaliation complaint of failure to investigate has been complained of in the EEOC Charge, the original complaint and more importantly in the extensive and ongoing investigation into these complaints" - there is no mention whatsoever in either the EEOC Charge or the Complaint of a "failure to investigate." (<u>See</u> Document No. 16 at 18-19; Document No. 1; and Document 16-2, Exhibit C).

Furthermore, there is no use of the words "investigate" or "investigation" in the EEOC Charge or the Complaint. After careful review of the Complaint, the undersigned is unclear whether Plaintiff ever contemplated a claim for failure to investigate when bringing this lawsuit. Paragraph 13 of the Complaint raises the only specific allegation of retaliation, and it is directly related to the degree requirement.

Now facing a summary judgment motion, Plaintiff's "failure to investigate" argument may be based on language in the Fourth Circuit's opinion affirming *Frederick I*. In that opinion, the majority stated:

9

> Because plaintiffs do not assert failure to update as part of their retaliation claim on appeal, we do not consider the allegation in this context. See United States v. Al-Hamdi, 356 F.3d 564, 571 n.8 (4th Cir. 2004) ("It is a well settled rule that contentions not raised in the argument section of the opening brief are abandoned."). Moreover, for this reason, we do not address whether the district court should have construed plaintiffs' failure to update claim more broadly to include the **failure to investigate**.
> We thus affirm the district court's grant of summary judgment to the City on each plaintiff's retaliation claim.

Belton v. City of Charlotte, 175 Fed. Appx. 641, 659 (4th Cir. 2006) (emphasis added). Judge Gregory dissented only on the basis of what he characterized as the Defendant's failure to investigate. Id. at 661. However, Judge Gregory's dissent acknowledges the existence of an investigation, while questioning its effect: "[W]hen Sanders was deposed several months after the **investigation**, his testimony revealed that the City had not taken steps to change the process for promotion ... a jury could find the **investigation** a mere formality, which failed to effect any changes in the Fire Department." Id. (Emphasis added).

Seemingly, in reaction to language from the Fourth Circuit opinion, the Plaintiff's "...Memorandum Of Law And Authority In Opposition To Defendant's Motion..." (Document No. 16), filed January 22, 2007, attempts to craft a new argument in this case for a claim of failure to investigate - <u>eight</u> <u>months</u> after the Fourth Circuit opinion was issued. At no time has Plaintiff sought to amend the Complaint pursuant to Fed.R.Civ.P. 15 to add a claim for retaliation based on a failure to investigate. Plaintiff's recent arguments in opposition to summary judgment do not contend that there was an inadequate or incomplete or incompetent investigation, but that there was simply a "failure to investigate."

Notwithstanding, we turn to the issue of whether any genuine issue of fact remains on this claim. During the *Frederick I* proceedings, Plaintiff took three sworn depositions of the Fire

Department's Human Resources representative, David Sanders. During these depositions Mr. Sanders described the investigation he had conducted. Presumably, at least partially based on these depositions, the Plaintiff included the following discussion in his Appellant's Brief to Fourth Circuit in *Frederick I*:

> In September 2002, four (4) of the five (5) African-American Battalion Chiefs including Chief Belton took their complaints to the Fire Department's Human Resources representative, David Sanders. JA 165. They informed Mr. Sanders that they felt they had been continuously discriminated against by Chief Fincher in the selection process for Deputy Chief, and that they had been "passed over" for promotion because of their race on numerous occasions. JA 167, 1029. Mr. Sanders understood their complaints to be about an "ongoing atmosphere of racial discrimination." JA 1029.
>
> Mr. Sanders subsequently met with Chief Fincher and Austin Hardison, the administrative officer for the Fire Department, regarding the African-American Battalion Chiefs allegations of continuing racial discrimination. JA 171, 182. Mr. Sanders informed Chief Fincher that he would be **investigating** the allegations against him and conducted an interview with Chief Fincher at that time. JA 173. Chief Fincher denied the allegations, but admitted to changing the promotional process requirements and the eligibility criteria for Deputy Chief. JA 190.
>
> Mr. Sanders had a second meeting with all five African-American Battalion Chiefs where he informed them that the City's Human Resources Department would conduct a **formal investigation** into their allegations. JA 168. The five (5) Battalion Chiefs provided Mr. Sanders with a list of witnesses to interview. JA 170.
>
> Mr. Sanders conducted his interviews and pulled all documents regarding the past four (4) promotions to Deputy Chief. JA 176-77. His "**investigation**" took ten (10) months to conclude, from September 2002 through June 2003. JA 1024. Mr. Sanders was able to conclude from his **investigation** that Chief Fincher had the opportunity to examine all candidates for the position of Deputy Chief and make changes to the eligibility criteria and the "process" to ensure that a white was promoted over an African-American. JA 222. Mr. Sanders also determined that Chief Fincher's approach to promoting white males to Deputy Chief could be perceived as

11

> racially discriminatory. JA 225. He also determined that it was
> possible that the five (5) African-American Battalion Chiefs had
> been discriminated against in the selection process. JA 231. Mr.
> Sanders made a recommendation to his supervisor in the Human
> Resources Department that Chief Fincher needed counseling on the
> perception that he is racially discriminatory. JA 1034. Mr. Sanders
> did not know if Chief Fincher had ever received such counseling.
> JA 1034-35. Upon the advice of counsel, Mr. Sanders never
> updated Chief Belton on the results of his **investigation**. JA 238,
> 824.

(Document 19-4 at 21-23 (Plaintiff-Appellant's Brief, June 20, 2005)) (emphasis added).

Thus, as Defendant has argued in its "...Reply in Support of Summary Judgment" (Document No. 19), the Plaintiff himself has described an investigation by David Sanders that included twice meeting with the five Battalion Chiefs, meeting with Chief Fincher and Austin Hardison, interviewing Chief Fincher, "and pull[ing] all documents regarding the past four (4) promotions to Deputy Chief." In light of the Sanders depositions, and the discussion by the Plaintiff in his own appellate brief in *Frederick I*, the undersigned finds Plaintiff's argument that there was a "failure to investigate" incorrect. Clearly there was an investigation. While the quality of the investigation could be debated, its existence cannot be. Because Plaintiff fails to establish an adverse employment action by a preponderance of the evidence, there is no prima facie case of retaliation.

### IV. CONCLUSION

For the foregoing reasons, the undersigned finds that Plaintiff cannot establish a prima facie case for retaliation - - either based on the four-year degree requirement, or a failure to investigate. There are no genuine issues of material fact in the instant case such that a reasonable jury could return a verdict for the Plaintiff. Plaintiff has not met his burden to convince the Court that a triable issue exists. Summary judgment for Defendant is therefore appropriate.

**IT IS, THEREFORE, ORDERED** that Defendant's "Motion For Summary Judgment" (Document No. 12) is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant's request for costs and fees, including attorney's fees, associated with the case is **DENIED**.

**SO ORDERED**.

Signed: September 10, 2007

David C. Keesler
United States Magistrate Judge